ALEXANDER S. CHADWICK *versus* JAMES STARRETT & *ux.*

In an action against husband and wife to recover for goods sold to her before her marriage, where it appeared that the wife, while sole, on her petition duly filed, had been declared a bankrupt under the U. S. bankrupt act of 1841, and had presented a petition for her discharge, and then intermarried with the other defendant; and subsequently to the marriage a certificate of discharge, under a decree of the court, was issued to her in her maiden name ; *it was holden,* that such certificate was available to her and to her husband as a defence to such suit.

In order to be enabled to offer evidence to impeach a certificate in bankruptcy on account of " some fraud or wilful concealment by him of his property," the " prior reasonable notice, specifying in writing such fraud or concealment", required by the bankrupt act, should be by replication to the defendant's plea, seasonably filed, or by written notice seasonably given, setting forth, in either case, *specifically,* the fraud and concealment, and wherein it consisted, as if it were a special declaration in an action of the case.

THIS was an action of assumpsit, to recover for goods sold and delivered to Nancy T. Hussey, while she was a *feme sole.* The sale and delivery were proved, at the trial before SHEPLEY J. It appeared that she was married to the other defendant, Starrett, on Nov. 15, 1843.

In defence, the copy of a certificate of discharge in bank-

ruptcy of Nancy T. Hussey was read, bearing date on Jan'y 31, 1844, and which recited, that her petition was filed June 21, 1842; that she was declared a bankrupt August 24, 1842; and petitioned for discharge Nov. 30, 1842. The plaintiff's counsel insisted, that the discharge was inoperative, because it was not obtained until after her intermarriage, and that it would not prevent the plaintiff from maintaining the action against the husband. The Court decided otherwise.

The plaintiff then claimed to impeach the certificate as obtained by fraud or wilful concealment, and offered to prove that it had been thus obtained; but the Court decided, that no such reasonable prior notice had been given as is required by the bankrupt act, to enable the plaintiff to make such proof, and that it could not be received.

Thereupon the plaintiff consented to become nonsuit, which is to be taken off and a new trial granted, if any of these rulings were erroneous.

The following is a copy of the notice filed by the plaintiff in the District Court on June 23, 1844 : —

"District Court, Middle District, December Term, 1844, Kennebec county. — *Alexander S. Chadwick* v. *James Starrett & al.* The plaintiff intends to contest the certificate in bankruptcy of the said Nancy T. on the following grounds : —

"1. Because said Nancy T. fraudulently preferred certain creditors, and because said Nancy T. was guilty of fraud and a fraudulent and wilful concealment of her property and rights of property, contrary to the provisions of the act under which said certificate was obtained.

"2. Because the act under which said certificate was obtained is contrary to the provisions of the constitution of the United States.

"3. Because said Nancy intermarried with James Starrett, one of the defendants in said action, during the pendency of her petition in bankruptcy and before she had obtained said certificate.

"4. Because said Nancy T. has not conformed to the requisitions of the act under which said certificate was obtained.

" 5. No discharge."

At June Term, 1845, of this Court, the plaintiff filed another notice, of which a copy follows : —

" S. J. Court, Kennebec Co. June Term, 1845. — *Alexander S. Chadwick, appellant*, v. *James Starrett & al.* The plaintiff in said action says, that the certificate in bankruptcy of Nancy T. Hussey ought not to avail the defendants in this action.

" 1. Because said Nancy T. married the said James before her said certificate was obtained.

" 2. Because said Nancy T. did not conform to the provisions of the law under which said certificate was obtained, in this, that she.fraudulently and wilfully suppressed and did not inventory in her schedule B., in her petition to be declared a bankrupt, the following goods, chattels, money, articles and securities.

" (1) An interest in a house, or house and land in Clinton.

" (2) Sundry notes and demands due said Nancy T.

" (3) Beds and bedding.

" (4) Table linen, knives and forks, spoons, castor, chairs, rugs, candle sticks, lamps, fire set, window curtains, jewelry, spectacles, tables and stands, napkins."

*Evans* and *Whitmore*, for the plaintiff, contended that the ruling of the Judge at the trial was erroneous, and therefore that the nonsuit should be taken off.

1. The legal existence of the original debtor was merged on her marriage with Starrett, and the proceedings afterwards, in bankruptcy, in her own name, as a *feme sole*, were entirely void. 5 B. and Ald. 759.

2. But if the certificate had been legally obtained, it could not have availed the husband, as a defence to this suit. The husband became instantly liable, when the marriage took place, for the debts of the wife, and he must himself have obtained a certificate in bankruptcy, and have proved it to the Court, to have discharged him from that liability. 9 Wend. 238.

3. The ruling of the Judge, that prior legal notice had not been given was erroneous. It was filed one term before the

trial, and that was earlier than was necessary. Reasonable notice only is required. And it was sufficient as to form, for it is only necessary to say, that the plaintiff intends to impeach the certificate, and tell wherefore.

*Wells,* for the defendants, said that every thing was done necessary for a discharge in bankruptcy, before the marriage, and it merely awaited the action of the Court. The certificate of discharge is a mere recital of the prior proceedings, and is made evidence of them. But the discharge takes place by the prior acts. The certificate of discharge relates back to the time of the filing of the petition.

The marriage could not make the husband any further liable than his wife was. If he took the wife with the liability to pay her debts, he took her also with liability to be discharged from them.

The mere filing of the notice with the clerk, is no notice to the defendant, or to his counsel, and in fact we knew nothing of it, until produced at the trial. This cannot be such *seasonable notice,* as the bankrupt act requires.

Nor was either of the notices such in form or substance, as is required by the law. Neither of them contain any specification of the fraudulent acts relied upon to avoid the effect of the certificate. They are but mere general and indefinite charges of fraud; and the list of articles gives no more information, as to the fraudulent acts relied upon, than it would to have said, that she had in her possession certain personal property, which she did not put into the schedule, as her property. And there might actually have been articles which had belonged to her, and which were not of the least value whatever.

The opinion of the Court was drawn up by

WHITMAN C. J. — The plaintiff claims to recover for goods sold to the defendant, the wife, while sole. She intermarried with the defendant, Starrett, after she, by her maiden name, on her petition, had been declared a bankrupt, under the act of Congress of 1841 ; and after she had presented her petition

for a discharge; and before a decree had been obtained for that purpose. Subsequently to the marriage, a certificate of discharge was decreed and issued, according to her petition, in her maiden name, and this is now relied upon in defence.

The plaintiff insists, that the certificate so granted is null and void, and furthermore, that it was fraudulently obtained by means of a wilful concealment by her of her property or rights of property, and is, therefore, inoperative. The Court, at the trial, ruled that the certificate was not objectionable on account of its being issued to the wife, by her maiden name, and in pursuance of a decree passed after her intermarriage with Starrett; and as to the supposed fraudulent concealment of property, that no such prior reasonable notice had been given as is required by the act to authorize the plaintiff to introduce proof of the existence of it; and thereupon a nonsuit was entered which is to be removed, and the action is to stand for trial, if the Court erred in either of those rulings.

The first question is, was the certificate of discharge, as issued, pleadable in bar of the action? Could she, after her intermarriage, as a *feme sole*, and by her maiden name, prosecute her petition, before presented, for a decree of discharge? And could a discharge issued to her in her maiden name, after her intermarriage, be available to her and her husband, as a defence against a suit for her debt incurred when sole? In reference to these inquiries we are without aid from precedents to be found in the books, bearing directly upon them. Generally we are well aware, that the marriage of a *feme sole* plaintiff, if regularly pleaded, abates her suit. If not pleaded, the suit may proceed to judgment in her name, and execution may issue thereon, as if she were sole. Comyn, Abatement, K. & H. 41. The decree of discharge was a judgment of Court. It was not, so far as appears, opposed by the creditors; yet we must presume it was preceded by regular proceedings for the purpose, and upon due notice given, and so that the creditors must be concluded as being privy to it. If such were not the case, they might, perhaps, avoid it by plea, as it is a general rule, that one not privy to a judgment, and having no

right to bring a writ of error, may so avoid it. Comyn, Error, D. But being, in cases like the one before us, constructively privies, it is not competent for them to avoid it in the manner proposed. Having been granted in the maiden name of the wife, it may be made, by proof of her identity, available to her and her husband in defence, in this case. If she had, while sole, being plaintiff in a civil action for damages, been allowed to proceed, and to recover judgment after marriage, we do not perceive why she might not afterwards be allowed to prosecute an action of debt thereon, conjointly with her husband, averring and proving her identity. If there be any objection to such a proceeding it must be merely technical, and have very little, if any, connection with the justice of the case. We are not aware of any precedent opposed to such a suit.

The other question presented, has not occurred in any adjudged case, precisely like the one before us, so far as we are informed. It must depend upon the construction to be put upon a provision to be found in § 4, of the statute before referred to, in these words, " and the same (the certificate of discharge) shall be conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud or wilful concealment by him of his property," " on prior reasonable notice, specifying in writing such fraud or concealment." What is meant by prior reasonable notice, specifying the fraud or concealment? Doubtless a replication in the case before us, setting forth the fraud or concealment specifically, as if it were a special declaration therefor in an action of the case, if seasonably filed, would be reasonable prior notice ; and a counter brief statement, under our statute, if the certificate were set up in defence in a brief statement, setting forth specifically the fraud and concealment, so that it could distinctly and clearly appear wherein the fraud and concealment consisted, if seasonably filed, would be a compliance with the requirement in the statute ; and so, if instead of a counter brief statement, notice in writing were given, being equally specific, long enough before the trial came on, to enable the defendant to know wherein the fraud and concealment were

supposed to consist, so as to enable the defendant to come prepared to encounter the allegation, it would be all that the statute requires.

The plaintiff, in the court below, filed a counter brief statement, and gave notice, besides, in writing, and in this Court has filed an amended notice, and the question is, was either of them sufficiently specific ? The counter brief statement contains some allegations, which have no connection with fraud or concealment. The second specification therein was doubtless supposed to contain the requisite description. It is, that the bankrupt, in her original petition and schedule B. therein, did not give an accurate inventory of her property, rights and credits of every name, kind and description, and of the location of each part and parcel thereof, as required by the act aforesaid. This cannot be regarded as such a specification as was intended by the law. It alleges, that she did not accompany her petition with an accurate inventory. This is done in general terms. No particular article is alleged to have been owned by her, and to have been by her wilfully concealed for the purpose of defrauding her creditors.

The other specifications, having reference to fraud, are to a similar amount. None of them describe the particular act wherein the fraud is supposed to have consisted; but merely make general allegations. One of them contains an averment that she "transferred certain securities," &c. without naming or describing, or attempting to describe any one of them. The notice filed in the court below is still more indefinite.

The notice filed in this Court states, that the bankrupt fraudulently and wilfully suppressed and did not inventory, in her schedule B., in her petition to be declared a bankrupt, an interest in a house, or house and land in Clinton ; sundry notes and demands due said Nancy T., beds and bedding, table linen, knives and forks, spoons, castor, chairs, rugs, candlesticks, lamps, fire set, window curtains, jewelry, spectacles, tables and stands, napkins." As to rights to land, or land and house in Clinton, it might be very difficult for her to conjecture what was intended. There is nothing in the description to lead her

Smith *v.* Readfield.

to suppose it to be one estate more than another, in that town; and as to the notes and demands, the remarks made in reference to the same allegation, in the brief statement, filed in the court below, apply here. As to the other articles the number of each is not stated, nor the value of any one or of all of them; nor is it alleged that they were articles owned by her, or ever in her possession; nor is any description given by which a single one, and much less all of them, could be identified. Such vague allegations would not, even in a declaration in an action of trover, and much less in an action of the case, be sufficient to put one upon his defence upon an accusation of fraud. Fraud is not to be presumed, but must be distinctly and particularly set forth, and be supported by corresponding proof.                       *Nonsuit confirmed.*