(119 N. W. 367.)

---

ABE SIEGEL v. CASSEL MARCUS.

Opinion filed January 7, 1909.

**Partnership — Sale of Good Will — Consideration — Legality.**

1. Upon the dissolution of a copartnership between S. and M., it was mutually agreed that the latter's interest in the partnership assets, including cash and merchandise, was of the value of $1,100, and in consideration of S. paying to M. said sum in cash for his said interest, M. agreed with S. "not to engage for the next two years" in the same business theretofore conducted by such firm, in the same city, "in the manner aforesaid, or with any partner, partners, firm, company or corporation for the period aforesaid." *Held,* that such contract is based upon a sufficient consideration and is in all respects legal and enforceable.

**Same — Breach of Contract — Vendor of Good Will Acting as Clerk for Rival of Vendee.**

2. After the dissolution of such copartnership and the entering into of such contract M. entered the employ as a clerk of one E., whom he was instrumental in procuring to open a rival business adjacent to that of S. and M., attended to the purchase of stock for such rival business.

. Appeal from District Court, Cass county; *Pollock, J.*

Action by Abe Siegel against Cassel Marcus. From a judgment for plaintiff, defendant appeals.

Affirmed.

*J. W. Tilly,* for appellant.

Promise without consideration is void. 6 Am. & Eng. Enc. Law, (2nd Ed.) 673; Lang v. Werk, 2 Ohio St. Rep. 530.

Where one sells the good will of a business, and bargains not to engage in it for a limited period in a certain locality, he is not barred from acting as a clerk in the same business, period and location. Battershell v. Bauer, 91 Ill. App. Ct. 181; Haley Grocery Co. v. Haley, 35 Pac. 595; Bishop on Contracts, (Enlarged Ed.) 521.

*T. H. McEnroe,* for respondent.

The good will of a business may be sold along therewith, within a limited period and territory. Rev. Codes, 1905, Sec. 5430; Mapes v. Metcalf, 10 N. D. 601, 88 N. W. 713.

The seller of the good will of a business must observe the spirit as well as the letter of his agreement. Emery v. Bradley, 34 Atl, Rep. 167; Kramer v. Old, 34 L. R. A. 291; Whitney v. Slayton, 40 Me. 224; Dwight v. Hamilton, 113 Mass. 175; Boutelle v. Smith, 116 Mass. 111; Jefferson v. Market, 37 S. E. 758; 24 Am. & Eng. Enc. Law. 859; Meyer v. Lebau, 26 So. 463; Angier v. Webber, 92 Am. Dec. 765; Nelson v. Johnson, 36 N. W., 868.

Fisk, J. This litigation arose in the district court of Cass county and comes here for trial de novo. The action was brought to obtain a perpetual injunction restraining defendant from engaging in any manner in the pawnbroker, secondhand clothing and jewelry business in the city of Fargo for the period of two years from and after February 18, 1907; it being plaintiff's contention that defendant entered into a lawful and binding contract to abstain during such period from engaging in such business in said city.

The facts are not seriously in dispute, and may be summarized as follows: Prior to February 18, 1907, respondent and appellant were copartners engaged in the secondhand clothing, jewelry, and pawnbroker business at 218 Front street in Fargo. On that date by mutual consent such copartnership was dissolved, and a full settlement was effected between them, whereby it was agreed that appellant's interest in the copartnership property, which consisted partially of cash and partially of merchandise, was of the value of $1,100, which sum respondent agreed to pay, and did pay, to appellant in cash as consideration for the execution and delivery by appellant to respondent of the following agreement: "For and in consideration of the sum of eleven hundred dollars ($1,100), to me in hand paid by Abe Siegel, I hereby specifically agree as a part of the consideration for said money, not to engage for the next two (2) years in the pawnbroker, second-hand clothing and jewelry business within the city of Fargo, Cass county, N. D., and I also hereby sell, assign, set over and deliver all my right, title, interest and lien in, to and upon the second-hand clothing, jewelry and pawnbroker business now owned and conducted by Abe Siegel & Co., at No. 218 Front street, Fargo, N. D., and every claim thereto and thereunder, and waive all right to the use of the said name or any part thereof in any business whatsoever. And I further agree as a part of the consideration herein, not to engage in the said business aforesaid, in the manner aforesaid, or with any partner, partners, firm, company or corporation for the period aforesaid. The receipt of said eleven hundred dollars ($1,100) is hereby specifically acknowledged. Said sale and purchase being made at my request and all of said goods being delivered unto said Abe Siegel free and clear of any and all incumbrance and indebtedness on my account or through me. And in execution hereof, and in agreement hereto, I have hereunto set my hand and seal the day and year first above written, that is to say, this 18th day of February, A. D. 1907, in the presence of the witnesses whose names are hereunto attached. Cassel Marcus. Witnesses: Matt. Siegel. E. Siegel."

In September, following, one Sam Epstein embarked in a similar pawnbroker business two doors east of respondent's place of business on Front street in said city, where he has continued said business ever since. Appellant at or prior to the opening of said store by Epstein entered into a contract of employment as clerk to work for and manage said store for said Epstein at a salary of $60 per

month, and appellant at the time of the commencement of this action was thus engaged in conducting said business as aforesaid; he being experienced in the business, while Epstein was inexperienced. There was considerable testimony tending to show that appellant was a partner with Epstein in such business, and, while it was admitted by said parties that they had certain preliminary negotiations looking toward the consummation of a copartnership arrangement between them, such negotiations were never consummated. Appellant and the said Epstein both testified, and the trial court found, that such negotiations were never completed. At the conclusion of the trial, the district court made findings of fact and conclusions of law favorable to plaintiff, and judgment was rendered perpetually enjoining appellant from engaging in said business in the city of Fargo in any manner whatever "as hireling, clerk, agent, or with a partner, partners, firm, or corporation" until after February 18, 1909, and for costs and disbursements, to reverse which judgment this appeal is prosecuted.

The only controversy between the parties arises on account of a disagreement between them regarding their legal rights under the agreement above stated; it being appellant's contention that his employment as a clerk in the store of Epstein did not and does not violate the terms of said agreement, while respondent contends to the contrary Minor questions are raised which we will consider later. It is conceded at the outset by appellant's counsel, and in this respect the law is well settled, that where a person, on the sale of a business or his interest in a business, contracts with the purchaser that he will not engage in that particular line of business in a certain locality for a certain period of time, he is bound by such contract, and a court of equity on a proper showing will restrain him from violating such agreement. This court, in Mapes v. Metcalf, 10 N. D. 601, 88 N. W. 713, in effect so held. Among other things, the court there said: "It has always been held lawful for the vendor of the good will of a business to bind himself to refrain from conducting a like business within a limited territory and for a limited period, provided, only, that his agreement to refrain shall be no more extensive than is necessary to secure to the vendee the fruits of his purchase." Section 5374, Rev. Codes 1905, provides: "Partners may upon or in anticipation of the dissolution of the partnership agree than none of them will carry on a similar business within the

same city or town where the partnership business has been transacted, and within a specified part thereof."

It seems also to be reasonably well settled, and we think correctly so, that parties to such contracts must not only comply with the letter but with the spirit thereof as well. It was so held in the late case of Kramer v. Old, 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. Rep. 650, where the court, among other things, said: "Where injunctive relief is asked, it is the duty of the court to restrain the contracting parties from violating the spirit as well as the letter of the agreement." In Emery. v. Bradley, 88 Me. 357, 34 Atl. 167, we find the following language; "It must be evident that for the defendant to get into and carry on the business * * * as clerk or agent of any person would violate the spirit and purpose of his agreement with the plaintiff. He would be carrying on the business, though as clerk or agent. It does not matter how or in what manner and what name he acts, if he in fact carries on the business he agreed not to carry on, he is acting, he is breaking his promise, whether he acts as principal or agent. Located at Bar Harbor and carrying on the photograph business there as clerk or agent, he would be in direct competition with the business he sold to the plaintiff, as much so as if he were to be doing the same acts in his own name. The spirit of his agreement requires that he should not compete in this business with the plaintiff, either directly, in his own name, or indirectly, as clerk or agent of some one else. In equity and good conscience he should abstain from both modes of competition. Under the allegations in the bill he can and should be enjoined from both"—citing Whitney v. Slaton, 40 Me. 224; Dwight v. Hamilton, 113 Mass, 175; Boutelle v. Smith, 116 Mass. 111. In Finger v. Hahn, 42 N. J. Eq. 606, 8 Atl. 654, we find this language: "I cannot perceive that the mere fact of his being employed at the salary protects him against this covenant. In my judgment, the letter and spirit of the covenant are just as certainly violated as though he were in partnership with Horst, or had the entire ownership and control of the business himself. In common sense or reason, the object of every such covenant is to get rid of the competition which endangers the business of the purchasing party, to remove beyond reach the influence of the vendor's popularity, business integrity, knowledge, or skill, and to make it impossible for personal influences and friendly considerations, arising from long-continued business acquaintance, exerting themselves to

the prejudice of such purchaser. Without these considerations, such contracts are quite meaningless. But not one of these influences is there which will not be felt or brought to bear, to a greater or less extent, if the vendor engage in business even as a clerk." To the same effect, see Jefferson v. Markert, 112 Ga. 498, 47 S. E. 758; Meyer v. Labou, 51 La. Ann. 1726, 26 So. 463; Nelson v. Johnson, 38 Minn. 255, 36 N. W. 868; 24 Am. & Eng. Encyc. of Law, 859; 20 Cyc. 1280, and cases cited.

Appellant's counsel rely upon Grimm v. Warner, 45 Iowa, 107, Battershell v. Bauer, 91 Ill. App. 181, Haley Grocery Co. v. Haley, 8 Wash. 75, 35 Pac. 595, and Bishop on Contracts, p. 521, as supporting the contrary rule. We have examined these authorities, and, with the possible exception of the Illinois case, we do not consider them at all in point. In the latter case the agreement was "to never start in the dry goods, clothing, boot or shoe business in Milton, Pike county, Illinois, directly or indirectly," as long as appellees continued in business in said place. It was said: "The contract did not prohibit appellant from accepting employment as assistant or clerk to others engaged in the like business mentioned in the contract, and we do not understand it is contended by appellees that it did, and in this view we think appellees failed to prove the case." This case, when considered in the light of the particular wording of the contract there under consideration and the tacit admission of appellees that the contract did not prohibit appellant from accepting employment as an assistant or clerk to others, cannot be deemed an authority in support of appellant's contention in the case at bar.

In the light of the above well-established rule, it is entirely clear to our minds that under the facts the trial court very properly held that appellant was violating his said contract with plaintiff. The facts in the case at bar disclose a clear violation by appellant of the spirit, if not the letter, of the contract, and render it a plain case for equitable relief. The record fairly discloses that appellant was instrumental in causing such rival business to be established; that he went to Minneapolis, where he purchased stock with which to start the business; and that he was the active agent in the conduct and management thereof after it was started. The testimony further shows that appellant at times stood on the sidewalk in front of respondent's store soliciting his prospective patrons away from him and urging them to become patrons of Epstein's place of business.

But appellant contends that, if the contract be given the construction herein given to it, it would violate paragraph 23 of article 1 of our state Constitution, which provides: "Every citizen of this state shall be free to obtain employment wherever possible, and any person, corporation, or agent thereof, maliciously interfering or hindering in any way, any citizen from obtaining or enjoying employment already obtained, from any other corporation or person, shall be deemed guilty of a misdemeanor." We think such contention devoid of merit. Such constitutional provision is not applicable to the facts in this case and was not intended to abolish the long and well established rule recognized by the foregoing authorities and others too numerous to mention.

Appellant also contends that there was no adequate consideration for the contract in question. This contention is supported by the argument that, inasmuch as appellant's interest in the cash and stock of the copartnership existing between plaintiff and himself was of the value of $1,100, he was entitled to such sum as a matter of law without executing and delivering to plaintiff the agreement aforesaid. But the fallacy of such argument is apparent for the reason that there was no legal duty resting on plaintiff to purchase appellant's interest in the merchandise. By the voluntary agreement of the parties plaintiff purchased such interest paying cash therefor, and as a part of the consideration for such contract of purchase the execution and delivery of the contract in question was made a condition thereof. This was perfectly legitimate, and there was ample consideration therefor. Section 5374, Rev. Codes 1905; Kramer v. Old, supra; 24 Am. & Eng. Encyc. of Law (2d Ed.) 853.

Judgment affirmed. All concur.