L. A. KOHLMAN, Richard L. Biersch-
bach, and David S. Anderson,
Plaintiffs and Appellants,

v.

Neil CAHILL, Defendant and Appellee.

No. 13084–a–REM.

Supreme Court of South Dakota.

Argued Oct. 15, 1980.

Decided Jan. 21, 1981.

Rehearing Denied Feb. 26, 1981.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellants.

James A. Wyly of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

MORGAN, Justice.

This case involves an agreement for the sale of appellee's partnership interest to appellants. The suit was commenced by appellants against appellee seeking injunctive relief and declaratory judgment that they not be required to pay the $7,000 allocated in the purchase price to goodwill, due to appellee's alleged violations of the agreement, particularly the covenant not to compete contained therein. The trial court ordered summary judgment for appellee, and appellants appeal from that order and judgment. We affirm.

Prior to April 18, 1979, the parties had operated, in Mobridge, South Dakota, a certified public accounting (CPA) firm under an oral partnership agreement. On April 28, 1979, they signed a "partnership interest sale agreement" whereby appellee terminated his partnership and sold it to appellants who continued in the partnership. On May 10, 1979, appellee opened a CPA practice in the basement of a rural home situated in Corson County, just across the Missouri River from Mobridge, Walworth County, South Dakota. The agreement contained, in addition to other provisions, a covenant not to compete, and also provided for the sale of appellee's client files and goodwill, with $7,000 of the total purchase price being allocated to goodwill. These portions of the agreement form the basis of this appeal. We will discuss the pertinent facts and language of the agreement as they are relevant to our decision.

We review the granting of summary judgment under the guidelines set out most recently in *Sioux Falls Const. Co. v. City of Sioux Falls,* 297 N.W.2d 454 (S.D.1980). Appellants argue that the trial court erred in granting appellee's motion for summary judgment on the grounds that a genuine issue of material fact existed with regards to the intention of the parties concerning the covenant not to compete.

■ This court's scope of review is such that we may look at the contract and read it without a presumption in favor of the trial court's determination. *North River Ins. Co. v. Golden Rule Const.,* 296 N.W.2d 910 (S.D.1980).

"In the absence of fraud, mistake or ambiguity the intention of the parties must be gathered from [the] agreement . . . ." *Berry v. Benner,* 81 S.D. 610, 617, 139 N.W.2d 285, 289 (1966). Neither side alleges any fraud, mistake, or ambiguity, so we will read the contract as it is written.

■ In determining the intent of the parties, the court must ascertain their mutual intent and give effect to it, if possible. *Johnson v. Johnson,* 291 N.W.2d 776 (S.D. 1980). In doing so, the court must consider the entire contract. *City of Sioux Falls v. Henry Carlson Co.,* 258 N.W.2d 676 (S.D. 1977). Also, "[c]ourts cannot by implication extend or restrict a contract as meaning something different than that intended by the parties." *In Re Security General Insurance Company,* 82 S.D. 47, 52, 140 N.W.2d 676, 679 (1966).

The agreement was signed only after extensive negotiations. Appellee and appellants were represented by counsel, and the agreement as signed was far different from the first draft. The evidence before the trial court was that appellee had kept all options open and protected himself as he had a right to do.

We first look at a portion of the covenant not to compete, which read as follows:

Terminating partner shall refrain from carrying on a similar business including but not limited to the trade or business of

accountancy, general ledger bookeeping [sic] services, tax planning, tax return preparation or audits or from directly soliciting present clientele of the partnership *within Walworth County*, South Dakota, from April 18, 1979, to and including April 18, 1981, or so long as the continuing partners or some of them and not as individuals, carry on a like business in Walworth County, South Dakota, whichever is shorter. (Emphasis supplied.)

There was no evidence by affidavit or otherwise that appellee violated any of the foregoing covenant, in particular that he directly solicited former clients, as appellants now contend. During appellate oral argument, counsel for appellants urged that had summary judgment been denied and the matter proceeded to trial, appellants probably could have produced evidence at trial of direct solicitation. Such an argument could undoubtedly be raised in most motions for summary judgment. Neither the affidavit of appellant Kohlman in resistance to the motion nor the deposition testimony of the parties showed any such evidence. We will not set aside the trial court's action on such speculation and conjecture.

█ Appellants allege that appellee violated the covenants of the agreement relating to advertisement, which read as follows:

[Nothing herein contained shall prohibit the retiring partner from a]dvertising the dissolution of the partnership and termination of the terminating partner from said partnership from April 18, 1978, [sic] through June 18, 1978, [sic] in a fashion that advises the public that the terminating partner is no longer a member of the partnership and is engaged in business elsewhere including the sending of a joint communique by terminating partner and continuing partners to the present clientele of the partnership advising of terminating partner's leaving the partnership, his new line of business so long as it is not the same as continuing partners' line of business, and the continuing partners' continuance of the partnership business.

.        .        .        .        .

Advertising terminating partner's services in a professional manner other than in newspapers, radio stations or other news media located in Walworth County, South Dakota.

The evidence showed only that appellee placed his name in the Aberdeen area phone book yellow pages under the heading "Accountants—Certified Public." In the white pages of the Mobridge phone numbers, appellee listed his name as follows:

Cahill Neil D CPA West Of City

Res East Of City

Appellee also placed a "help wanted" ad, advertising for more CPAs and office personnel, in the Aberdeen American News, in addition to ads in area newspapers published outside Walworth County, to announce the termination of his association with the partnership and the opening of his office in Corson County. None of these acts fell within the restricted areas.

We therefore hold that, under the facts as they were before the trial court at the time of appellee's motion for summary judgment, appellee did not violate the above covenants.

█ Appellants also allege that appellee destroyed the goodwill which he had sold to appellants, so they should not now be obligated to pay for such goodwill. There is nothing in the record to support this contention. Appellants were aware that Mobridge is situated adjacent to the Corson-Walworth County lines. The agreement anticipated that he would continue to reside in Mobridge with the proviso only that he not conduct a CPA practice in the county of his residence. Appellants were fully aware that the relationship between a CPA and his client is far different from that between a ribbon clerk and his customers. They could reasonably have anticipated that appellant's clients would be inclined to retain the services of the accountant who had been their adviser in previous years. Appellee remained within the confines of the parties' agreement, refrained from doing that

which he was restricted from doing, and did nothing more than what the parties had contracted that he be allowed to do. Injunctive relief could not lie to further restrict him. Appellants are obligated under the contract, which they also negotiated and signed, to pay appellee for his goodwill.

Based on the evidence before it, and viewing it in the light most favorable to appellants, the trial court found no genuine issue of material fact to exist, so it granted appellee's motion for summary judgment. We agree and accordingly affirm.

WOLLMAN, C. J., concurs.

FOSHEIM, J., concurs specially.

DUNN and HENDERSON, JJ., dissent.

FOSHEIM, Justice (concurring specially).

I agree that there is no genuine issue of material fact with respect to whether appellee breached the anti-competitive clause of the contract. Further, while it may be conceded that an implied covenant not to directly solicit former clients may co-exist with an express covenant not to compete, the evidence presented to the trial court simply failed to indicate any direct solicitation by appellee of his former clients. *See Bergum v. Weber*, 136 Cal.App.2d 389, 288 P.2d 623 (1955).

Accordingly, I concur.

DUNN, Justice (dissenting).

I would reverse the trial court's granting of a summary judgment and remand the case for a plenary trial.

The contract not to compete stated among other things that:

Terminating partner shall refrain from carrying on a similar business including but not limited to the trade or business of accountancy, general ledger bookeeping [sic] services, tax planning, tax return preparation or audits or from directly soliciting present clientele of the partnership *within Walworth County*, South Dakota, from April 18, 1979, to and including April 18, 1981, or so long as the continuing partners or some of them and

not as individuals, carry on a like business in Walworth County, South Dakota, whichever is shorter. (Emphasis supplied.)

It is my belief that there is a question of fact as to whether appellant is carrying on a similar business in Walworth County when he: (1) Set up a CPA office in Corson County just across the river from Mobridge within a week after the contract was executed; (2) advertised in a Mobridge phone directory "Cahill Neil D CPA West of City Res East of City"; (3) had a form letter drawn by his attorney whereby former clients could demand files from the appellants; and (4) advertised that he had terminated his association with Cahill and "would continue to provide all services that were previously available."

The following notice was placed in the Faith, Aberdeen and other area newspapers:

### NOTICE

Effective as of April 18, 1979 I have terminated my association with the accounting firm of Cahill, Kohlman, and Guhin, Mobridge, South Dakota. I am establishing an office at the A. C. (Art) Smith Residence which is located just west of Mobridge in Corson County across the Missouri River Bridge on the Sitting Bull Monument Road. To avoid delay later in the year, it would be advisable to establish files with this office as soon as possible.

The mailing address will be Route 2, Mobridge, South Dakota 57601 and the office telephone number will be 605–845–2484 until May 17 then the permanent number will be 605–845–2927.

I will continue to provide all services previously available.

Neil D. Cahill, C.P.A.

This would seem to raise a question of facts as to whether the language used in this notice fulfills his obligations under the advertising section of the contract, where it said he could put a notice in the papers regarding his termination with the continu-

ing partners and as to his "new line of business so long as it is not the same as continuing partners' business."

Finally, there is a question of fact as to whether appellee violated the entire spirit and intent of the contract. He accepted $85,000 from the appellants to refrain from competing with the continuing partners in Walworth County for a period of two years. In what I am sure he thought to be a skillful and shrewd manipulation of the contract he immediately set up shop and proceeded to carry on the same business in the same community in violation of the spirit and intent of the contract. "[P]arties to such contracts must not only comply with the letter but with the spirit thereof as well." *Siegel v. Marcus*, 18 N.D. 214, 218, 119 N.W. 358, 359 (1909). See *Johnson v. Stumbo*, 277 Ky. 301, 126 S.W.2d 165 (1939). The majority would condone this "loophole justice." I cannot. I would reverse and remand the case for a trial on the merits.

HENDERSON, Justice (dissenting).

I specially join in the dissent of my esteemed colleague, Justice Dunn. SDCL 53–9–9 provides:

> One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or part thereof, so long as the buyer or person deriving title to the good will from him carries on a like business therein.

Cahill (appellee) sold his goodwill in an accountancy practice to Kohlman, Bierschbach, and Anderson (appellants) and agreed to refrain from carrying on a similar business within Walworth County. Appellee and appellants were partners and had their office located in the City of Mobridge, which is located in Walworth County. The ink was barely dry on the contract when appellee-Cahill set up an accounting office in a farmhouse in Corson County, 1½ miles west of Mobridge. True, appellee-Cahill no longer had an office situs in the City of Mobridge, but as Justice Dunn's dissent points out, he was soliciting business in Walworth County. It appears to me that appellee-Cahill, immediately after selling his share of the accounting business, set about to deliberately retrieve that which he had sold. Are there sufficient facts to create a material factual question as to whether appellants-Kohlman, Bierschbach, and Anderson, were unjustly deprived of the fruits of their contract? That is the question—and it appears to me that summary judgment was unwarranted under the circumstances.

SDCL 43–35–6 provides that "[t]he good will of a business is the expectation of continued public patronage . . . ." It likewise provides that "[t]he good will of a business is property, transferable like any other" right. Appellee-Cahill sold his goodwill and transferred that right under this statute. Specifically, the contract apportioned the purchase price as follows:

| | |
|---|---|
| Client files | $48,000 |
| Physical assets | 25,000 |
| Non-compete covenant | 7,000 |
| Goodwill | 5,000 |

Our state statute, SDCL 53–9–9, limits the geographical extent of non-compete agreements and this is rooted in the common law doctrine that covenants in restraint of trade, if unreasonable, are not enforceable. There is no suggestion here that the non-compete covenant is unreasonable. Consequently, the contract is enforceable.

I maintain that the spirit and purpose of this contract cannot be ignored. It must be construed in the light of the surrounding circumstances. I cite as authority *Public Opinion Pub. Co. v. Ransom*, 34 S.D. 381, 386, 148 N.W. 838, 839 (1914), wherein Justice Whiting, writing for this Court, stated:

> Our statute having declared what is a "reasonable" restraint of trade, and the contract in question not violating the provisions of such statute, we cannot agree with appellant in his contention for a strict construction of the contract, but hold that the provisions of such contracts should be construed in the light of the surrounding circumstances, and that the intent of the parties should be carried out, if such intent is one which the law

sanctions. Well may the law look with favor upon contracts in "reasonable" restraint of trade.

Certainly, appellee-Cahill has not urged the invalidity of this contract; rather, he rests upon a strict construction of it, albeit like a fox who feeds upon a literal interpretation of its phraseology in a farmhouse just across the river and county line in Corson County. Under the majority opinion, verbiage is vaulting over substance.